James E. Cecchi
Lindsey H. Taylor
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO**
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Antonio Vozzolo
Courtney E. Maccarone
**FARUQI & FARUQI, LLP**
369 Lexington Avenue, 10th Floor
New York, NY 10017
(212) 983-9330

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL KLEMBALLA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TELEBRANDS CORPORATION and HOME DEPOT U.S.A., INC,<br><br>Defendants. | Civil Action No.<br><br><br><br><br><br>**COMPLAINT and**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Michael Klemballa ("Plaintiff"), by his attorneys, makes the following allegations pursuant to the investigations of counsel and upon information and belief, except as to the allegations specifically pertaining to himself and his counsel, which are based on personal knowledge:

## NATURE OF THE ACTION

1.      This is a class action against Telebrands Corporation ("Telebrands") and Home Depot U.S.A., Inc. ("Home Depot," and together with Telebrands, the "Defendants") arising out of the marketing and sale of the "Mini Max Hose" and "Pocket Hose" brands of expandable

garden hoses (collectively "Pocket Hose").[1]  Defendants' marketing and promotion of the Pocket Hose product relies on false and misleading claims about the durability, construction, and suitability of the Pocket Hose product as a garden hose.

2.     Through an extensive, nationwide marketing and advertising campaign, Defendants have conveyed the message that the Pocket Hose product is a rugged and durable expandable garden hose that is designed to be used outdoors and is "strong enough for any tough job."[2]  Furthermore, Telebrands represents that the Pocket Hose is manufactured using "heavy duty fire hose construction."

3.     Additionally, Defendants represent that the Pocket Hose is fit for use as a maximum length full size garden hose and is "[p]erfect for gardens, terraces, patios and more" or for any size job.  *Id.*

4.     Defendants' representations are false and misleading.  The Pocket Hose is not durable, let alone made of heavy-duty construction.  In fact, the design of the Pocket Hose product is fundamentally defective and thus not suitable to be used as a garden hose as advertised.  When used as instructed, the Pocket Hose will leak and/or burst, rendering the product useless.  Plaintiff's Pocket Hose burst shortly after purchasing the product, only after a handful of uses.

---

[1]     The Pocket Hose product comes in several lengths, including 25', 50', 75' and 100' varieties.

[2]     *See Pocket Hose ½ in. x 50 ft. Expanding Garden Hose*, Home Depot, http://www.homedepot.com/p/Pocket-Hose-1-2-in-x-50-ft-Expanding-Garden-Hose-7205/204069673 (last visited Feb. 6, 2014); *see also* Pocket Hose, https://www.pockethose.com/ (last visited Dec. 22, 2014).

5.      Plaintiff's experience is consistent with thousands of complaints and/or reviews regarding the durability and quality of the Pocket Hose product that litter internet product review sites and/or message boards.

6.      Moreover, at all relevant times hereto, defendant Home Depot affirmatively participated in and/or adopted the false and misleading advertising and marketing claims about the Pocket Hose.  Among other things, Home Depot is responsible for (1) utilizing false and misleading in-store Pocket Hose advertisements, displays and/or exhibits, (2) reviewing and approving false and misleading advertising materials for promoting the sale of the Pocket Hose, including advertisements that bore the retailers' names, logos and/or trademarks, and (3) selling Pocket Hose products to end users.

7.      Plaintiff seeks relief in this action individually, and as a class action on behalf of similarly situated purchasers of the Pocket Hose product, for violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, for breach of express warranty, for breach of the implied warranty of merchantability, for unjust enrichment, for negligent misrepresentation, and violations of New York's General Business Law § 349, *et seq.*, New York's General Business Law § 350, *et seq.*

## THE PARTIES

8.      Plaintiff Klemballa is a citizen of New York.  Plaintiff viewed the infomercial concerning the Pocket Hose product prior to the time of purchase and understood them as a representation and warranty by Telebrands that the Pocket Hose was a rugged and durable garden hose that was strong enough for any tough job.  Moreover, he understood that the Pocket Hose was robustly designed and would be fit for the ordinary purposes for which garden hoses are used.  He relied on these representations and warranties in deciding to purchase the Pocket

Hose product, and these representations and warranties were part of the basis of the bargain, in that he would not have purchased the Pocket Hose product if he had known that it was not, in fact, rugged nor durable.  Plaintiff also viewed an in-store Pocket Hose display in a Home Depot retail store in Farmingdale, New York and understood that in making the sale, Home Depot was acting with the knowledge and approval of Telebrands and/or as the agent of Telebrands.  On or about June of 2013, Plaintiff purchased a 50' Pocket Hose product from Home Depot in Farmingdale, New York, for approximately $19.88, plus sales tax.  In return, he received a product that was neither durable nor suitable as a garden hose.  Moreover, although Plaintiff's Pocket Hose was used as advertised, the Pocket Hose product burst within approximately one and a half (1.5) months after purchase and only after a handful of uses.

9.     Defendant Telebrands is a New Jersey corporation with its principal place of business and headquarters located at 79 Two Bridges Road, Fairfield, NJ 07004.  Telebrands is a leading direct television marketing company and is engaged in the business of marketing and selling a wide variety of consumer products in this Judicial District and nationwide through direct response advertising, catalogue, mail order, and Internet sales, and through national retail stores.  According to Telebrands' founder and CEO AJ Khubani, his team searches the world for useful and inventive products that help consumers save time, save money, and find effective solutions to everyday challenges.  Among the most successful products Telebrands launched are: AmberVision sunglasses, PedEgg foot file, PediPaws pet nail trimmer, Stick Up Bulb, Olde Brooklyn Lantern, Stone Waveproducts, and the Pocket Hose.  Telebrands has sold, either directly or indirectly, millions of units of the Pocket Hose product.

10.     Defendant Home Depot is a Delaware corporation with a principal place of business in Atlanta, Georgia. Home Depot is the world's largest home improvement

specialty retailer and the fourth largest retailer in the United States.  It has more than 2,200 retail stores in the United States (including Puerto Rico and the U.S. Virgin Islands and the territory of Guam), Canada, Mexico, and China.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

12.    This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendants.

13.    This Court has personal jurisdiction over Defendants because Telebrands is a citizen of and maintains its principal headquarters in New Jersey and the false and misleading statements at issue in this case emanated from New Jersey, and Home Depot conducts substantial business within New Jersey, such that Home Depot has significant, continuous, and pervasive contacts with the State of New Jersey.

14.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants do business throughout this district, and a substantial part of the events giving rise to the claims herein occurred within this judicial District.  Furthermore, Telebrands maintains his principal place of business in this District, and Telebrands distributed, advertised and sold the Pocket Hose product, which is the subject of the present complaint, in this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

**A.      The Direct Response Television Marketing**

15.      Telebrands, the original creator of the "As Seen On TV" logo, is one of the oldest and most recognized companies in the direct response television marketing industry ("DRTV"). The DRTV market is a type of aggressive marketing campaign designed to generate an immediate response from consumers in the form of sales or product orders.  The delivery of the response is direct between the viewer and the advertiser, as the customer responds to the marketer directly.  In direct response marketing, marketers use broadcast media to get customers to contact them directly.

16.      Typically, direct response television programs incorporate an infomercial in either short form (30 seconds to five minutes) or long form (approximately 30 minutes) direct response programs.  The formats discuss and demonstrate products and provide a toll-free number or website for viewers to purchase the products.  DRTV marketing creates rapid customer awareness and brand loyalty.

17.      Moreover, because of this broad reach, DRTV can deliver a large volume of sales and customers.  This broad reach also allows the ability to leverage and improve all other medium's results.

18.      In fact, this method of advertising is so successful that DRTV has ballooned into a $350 billion dollar industry.

19.      Telebrands was one of the first companies to capitalize on the powerful marketing tool, offering products with mass appeal and low production costs.  Since its founding more than 30 years ago, Telebrands has become a behemoth in the DRTV market, generating annual sales of more than $500 million.   Moreover, Telebrands has launched more products through DRTV than any other marketer in history.

20.    During this time frame, Telebrands has also refined and revolutionized the category's retail sector through a technique or strategy known as retail driving.  Telebrands is widely known through or throughout the retail industry for the manner in which it effectively drives retail sales through its nationwide advertising programs.  For many years, Telebrands has cultivated relationships with a wide variety of wholesalers, marketers, distributors, sellers, and retailers including, for example, large retail chain stores, catalogues, and Internet sales websites.  According to Telebrands, the company's "success is based in part by expending a large amount of money advertising products on television for direct response orders.  The television advertising created a heightened brand awareness and recognition of the product among consumers who then purchase the product in retail stores."

21.    National retailers have acknowledged this retail driving strategy.  For example, Tony Santelli, a merchandise manager for Walgreen has acknowledged "[w]e have become a retail destination for seen-on-TV products, and customers are coming to us looking for those hot new items."[3]

### B.    Telebrands Introduces The Pocket Hose to the Masses

22.    On or about August of 2012, Telebrands commenced marketing the Pocket Hose product through a substantial direct response television advertising campaign.  Specifically, Telebrands launched Pocket Hose as a revolutionary lightweight mini-hose that is small enough to fit in your pocket, yet expands to a maximum length full size garden hose under water pressure.

---

[3]    *See* Theresa Howard, *Investors seek pot of gold through TeleBrands*, USA Today (June 30, 2009), http://usatoday30.usatoday.com/money/advertising/2009-06-24-telebrands-inventors_N.htm.



23.    As such, Telebrands boasted that the Pocket Hose is "perfect for anywhere you water – washing cars, watering the garden, spaying down the patio or driveway, you name it."

24.    According to Telebrands, the secret to the Pocket Hose's lightweight and durable design is the accordion design or "heavy duty fire hose construction."

25.    Specifically, Telebrands represents that Pocket Hose is constructed of a "tough" hollow outer tube lining and a hollow "durable" rubber hose inner tube.

26.    When pressurized water is introduced, the inner tube expands in width and length within the confines of the outer tube member.  When the water is turned off and the water pressure decreases, the inner tube member contracts substantially allowing the outer tube to gather into a contracted state.

27.    The Pocket Hose product is offered in 25', 50', 75' and 100' lengths.  Telebrands sells the Pocket Hose through direct response channels to the general consuming public throughout the United States and within this Judicial District.  Pocket Hose was initially available via infomercial and online at www.minimaxhose.com and subsequently at www.pockethose.com.  Pocket Hose retails on Telebrands' website for:  (1) 25 foot length- $12.99 plus $7.99 shipping and handling; (2) 50 foot length- $22.99  plus $7.99 shipping and

handling; (3) 75 foot length-  $32.99 plus $7.99 shipping and handling; and (4) 100 foot length-$42.99 plus $7.99 shipping and handling.

28.     Pocket Hose is also sold through a number of national retailers, including: Walgreens, CVS, Rite Aid, Walmart, Target, Safeway, Fred Meyers, Mejers, Kohls, Home Depot, and Bed Bath & Beyond.

### C.    Defendants' False And Misleading Advertising Campaign

29.     Defendants have engaged in a massive, uniform marketing and advertising campaign replete with false and misleading statements about the nature, characteristics, and qualities of the Pocket Hose product.  This high-intensity campaign, which occurred in several forms of media,[4] involved the dissemination of materially false and misleading statements which represent, both expressly and by implication, that the Pocket Hose is a "durable" and rugged hose that is "strong enough for any tough job."  Furthermore, the false and misleading statements represented that the Pocket Hose was robustly designed, utilizing "heavy duty fire hose construction."

30.     Specifically, Telebrands websites, including www.minimaxhose.com and www.pockethose.com, contain multiple representations that Pocket Hose is durable and of heavy duty construction, and fit for use as an ordinary garden hose.  For example, in the front page of Telebrands' website, Telebrands states that "[t]he MiniMax hose is made of expandable industrial strength nylon with a heavy gauge polymer inner hose that makes it strong enough for any size job."

---

[4]     Including, but not limited to television infomercials, internet, print, and point of sale advertisements.

31.     Furthermore, Telebrands' website prominently states that the Pocket Hose is "so strong, it can pull a 5,000 pound SUV!"  Additionally, Telebrands' website states that the "super powerful-Pocket Hose grows long & strong enough for any size job!"   A screen shot of the website is reproduced below:



32.     Similarly, Telebrands has featured these false and misleading representations in television infomercials and online commercials.  For example, Telebrands produced a video advertisement for the Pocket Hose product that makes false and misleading representations about the product's durability and suitability as an ordinary garden hose.  The commercial, featuring TV Host Richard Karn, appeared on Telebrands' website at www.pockethose.com, and prominently states that the Pocket Hose product is made utilizing "heavy duty fire hose construction."  The commercial also features an illustration explaining the accordion design, touting the use of a "durable" rubber hose and "tough" outer lining.  Screen shots of the commercial are reproduced below:





33.     A longer version of this commercial also airs nationwide in a two minute thirteen

second video.  Again the infomercial prominently states that the Pocket Hose product is made

utilizing "heavy duty fire hose construction" with an identical illustration explaining the accordion design, and the use of a "durable" rubber hose and "tough" outer lining.

34.    In another infomercial, a spokesman states that the Pocket Hose is "strong enough to pull this 5,000 pound SUV."  Screen shots of the commercial, featuring an SUV pulling and other SUV with a Pocket Hose are reproduced below:



35.    Telebrands repeatedly makes claims that the Pocket Hose product is not only "tough" and "durable", but more specifically that the Pocket Hose is "strong enough for any tough job."  A reproduction of a print advertisement is reproduced below:



36.    National retailers utilize the same promotional materials on their websites.  For example, Home Depot's webpage, which provides a product overview highlighting prominent

features of the Pocket Hose states:  "The secret is Pocket Hose's expandable accordion design that helps it grow long and strong enough for any tough job."[5]

37.   The Sears website, which provides a description of the Pocket Hose, states that the Pocket Hose is "strong enough to tow a 5,000 pound SUV" and "the rugged fire hose style construction ensures it's tough enough for years of watering, spraying, filling and more."[6]

38.   Similarly, Walgreens' website states:  "The secret is Pocket Hose's expandable accordion design that helps it grow long and strong enough for any tough job.  Perfect for gardens, terraces, patios and more, you just turn on the water and watch Pocket Hose grow and grow and grow!"[7]

39.   Furthermore, in conjunction with each sale, the Defendants warranted that the Pocket Hose was fit for the ordinary residential use for which such goods are used and were free from defects.  Defendants represent that the Pocket Hose is fit for use as a maximum length full size garden hose "maximum length full size garden hose", "perfect for gardens, terraces, patios and more" or for any size job.  False statements about the Pocket Hoses product's ability to be used as a garden hose also amounts to a false and misleading promise that the Pocket Hose is fit for use as an ordinary garden hose during outdoor use and for a variety of applications.

---

[5]   *See Pocket Hose ½ in. x 50 ft. Expanding Garden Hose*, Home Depot, http://www.homedepot.com/p/Pocket-Hose-1-2-in-x-50-ft-Expanding-Garden-Hose-7205/204069673 (last visited Feb. 6, 2014).

[6]   *See Telebrands 50 Foot Pocket Hose as Seen on TV The Hose that Grows to 50 Feet*, Sears, http://www.sears.com/as-seen-on-tv-50-ft-pocket-hose/p-00831109000P (last visited Dec. 22, 2013).

[7]   *See Telebrands Pocket Hose – 50 Foot*, Walgreens, http://www.walgreens.com/store/c/telebrands-pocket-hose---50-foot/ID=prod6153066-product (last visited Feb. 6, 2014).

40.     However, the claims that that Pocket Hose is "durable," "made of heavy duty fire hose construction" and "strong enough for any job," are false and misleading.  Pocket Hose is prone to leaking, developing holes, and/or bursting.  Using the Pocket Hose in the exact manner as advertised causes the device to leak or burst, rendering it useless and unsuitable for the ordinary purposes for which they were advertised, marketed and sold.

41.     Plaintiff Klemballa's experience illustrates the falsity of Defendant's claims. Plaintiff Klemballa's Pocket Hose product was used as directed and burst after less than 5 uses, rendering it useless.

42.     The Internet is replete with consumer complaints that describe similar experiences of leakage or bursting of the Pocket Hose product.  For example, one consumer wrote:

> This is the worst excuse for a hose I have ever had.  Tried a total of three hoses over time and they all burst.  Don't waste your money on this product.[8]

Another consumer wrote:

> We've had this hose for about 6 months.  It was working very well until this evening when it just burst, like a balloon.  The water was on a very low pressure setting and I turned the lever to stop the water while moving something and then it just exploded.  My two-year-old was near by, thank goodness it wasn't too close or it could've been pretty dangerous.  Don't buy this hose.  Neat concept, poor execution.  Wish I could post a photo.[9]

Another consumer wrote:

> It broke in less then [sic] 5 uses. I would not recommend this item. I loved how light it is but it just doesn't last at all.[10]

---

[8]     *See Customer Reviews: Telebrands Pocket Hose, 50-Feet*, Amazon.com, http://www.amazon.com/Pocket-Hose-6847-12-Telebrands-50-Feet/product-reviews/B00ATZZWQS/ref=cm_cr_pr_btm_link_2?ie=UTF8&filterBy=addOneStar&pageNumber=2&showViewpoints=0&sortBy=bySubmissionDateDescending  (last visited Feb. 6, 2014).

[9]     *See id.*

[10]    *See id.*

Another consumer wrote:

> At first I liked it.  Was easy to use !  Then in a few weeks it split open and was no good.  I had bought one for a friend and there's did [sic] the same thing.  Heard several other peoplehad the same thing happen to them.  Would not spend my money for another![11]

Another consumer wrote:

> I bought 2, my friend bought 2 and my grandmother bought 3.  All seven blew out and started leaking after less than a month of occasional use. 4 blew out where the plastic connects to the hose and 3 blew out along the hose. . . .[12]

Another consumer wrote:

> I got this hose at Home Depot. It's small, and grows to a long length. I used it with a nozzle that masked any flow problems.  When water gets turned off, the hose shrinks a lot. It's amazing.  After about two months, and 3-4 uses, I went to use it again with the nozzle on, and it exploded. Like "BOOM!"  It was now trash.[13]

Another consumer wrote:

> I loved the idea of this hose, but unfortunately the hose burst open when using it for about the fourth time.[14]

Another consumer wrote:

---

[11] *See Customer Reviews: Telebrands Pocket Hose, 50-Feet*, Amazon.com, http://www.amazon.com/Pocket-Hose-6847-12-Telebrands-50-Feet/product-reviews/B00ATZZWQS/ref=cm_cr_pr_btm_link_5?ie=UTF8&pageNumber=5&showViewpoints=0&sortBy=bySubmissionDateDescending (last visited Feb. 6, 2014).

[12] *See Customer Reviews: Telebrands Pocket Hose, 50-Feet*, Amazon.com, http://www.amazon.com/Pocket-Hose-6847-12-Telebrands-50-Feet/product-reviews/B00ATZZWQS/ref=cm_cr_pr_btm_link_3?ie=UTF8&filterBy=addOneStar&pageNumber=3&showViewpoints=0&sortBy=bySubmissionDateDescending  (last visited Feb. 6, 2014).

[13] *See Customer Reviews: Telebrands Pocket Hose, 50-Feet*, Amazon.com, http://www.amazon.com/Pocket-Hose-6847-12-Telebrands-50-Feet/product-reviews/B00ATZZWQS/ref=cm_cr_pr_btm_link_4?ie=UTF8&filterBy=addOneStar&pageNumber=4&showViewpoints=0&sortBy=bySubmissionDateDescending (last visited Feb. 6, 2014).

[14] *See id.*

I paid $20 when it first came out and didn't even last a month. It busted and I don't even know why.   I wouldnt [sic] recommend it to anyone.   Don't waste your money.[15]

Another consumer wrote:

I ordered 4 of these hoses about a year ago and all 4 have burst. Good idea but not durable at all.[16]

Another consumer wrote:

Worst piece of junk, ever.  I've had two of these (boy, am I dumb thinking the second one wouldn't be junk!!!).  Both times, for no apparent reason the outer covering split and the inner plastic hose burst.  PLEASE DON'T BE AS STUPID AS I WAS.  SAVE YOUR MONEY.[17]

Another consumer wrote:

This flimsy hose burst while using it for the first time. While doing some yard work the outer green covering ripped open and the colourless piece inside stsrted [sic] to balloon up, I had to run to turn off the tap or it would have burst right open.[18]

Another consumer wrote:

Don't bother.  Broke from the water pressure.  Was at a friends [sic] house, who also had one, when i [sic] told him what happened to mine.  No less than 5 minutes later he goes to turn his hose on and the thing breaks on him. Total waste of money.[19]

---

[15]     *See id.*

[16]     *See Customer Reviews: Telebrands Pocket Hose, 50-Feet*, Amazon.com, http://www.amazon.com/Pocket-Hose-6847-12-Telebrands-50-Feet/product-reviews/B00ATZZWQS/ref=cm_cr_pr_btm_link_5?ie=UTF8&filterBy=addOneStar&pageNumber=5&showViewpoints=0&sortBy=bySubmissionDateDescending (last visited Feb. 6, 2014).

[17]     *See Customer Reviews: Telebrands Pocket Hose, 50-Feet*, Amazon.com, http://www.amazon.com/Pocket-Hose-6847-12-Telebrands-50-Feet/product-reviews/B00ATZZWQS/ref=cm_cr_pr_btm_link_6?ie=UTF8&filterBy=addOneStar&pageNumber=6&showViewpoints=0&sortBy=bySubmissionDateDescending (last visited Feb. 6, 2014).

[18]     *See id.*

[19]     *See Customer Reviews: Telebrands Pocket Hose, 50-Feet*, Amazon.com, http://www.amazon.com/Pocket-Hose-6847-12-Telebrands-50-Feet/product-

(footnote continued...)

Another consumer wrote:

> What a great product until it popped. I also have a couple friends that had them and theirs popped too.[20]

Another consumer wrote:

> We thought it was great when we first bought it, and even got another one, so we had one for the front yard and one for the back.  They both broke, or ripped a few months after getting them.  Great in theory, not so great in reality.[21]

Another consumer wrote:

> Pocket Hoses are not a buy instead they are a dud. I have had 5 of them and all have popped or leaked so bad they could not be used.  I'am [sic] very careful store them in the garage and use kid gloves with them.  I reduced the water pressure to little more than a trickle and still after 10 uses they popped.  I always drain the hose completely when I'm done. I'm 73 years old and I would rather tote around a 10lb hose than have a Pocket Hose.  So why did I replace 5 of them? Because I kept thinking the next one was better.  They all are the same.  Bad product don't buy.[22]

Another consumer wrote:

> I purchased two of these and they both ruptured within three days time.  If you buy one of these, do not step on them, rub them again [sic] a wall, curb, rocks, bricks, etc.  The [sic] break so easily.  They are made of the cheapest materials and are absolute junk!  My neighbor had one and experienced the same failure as

(...footnote continued)
reviews/B00ATZZWQS/ref=cm_cr_pr_btm_link_7?ie=UTF8&filterBy=addOneStar&pageNumber=7&showViewpoints=0&sortBy=bySubmissionDateDescending (last visited Feb. 6, 2014).

[20] *See Customer Reviews, Telebrands Pocket Hose, 50-Feet*, Amazon.com, http://www.amazon.com/Pocket-Hose-6847-12-Telebrands-50-Feet/product-reviews/B00ATZZWQS/ref=cm_cr_pr_btm_link_2?ie=UTF8&filterBy=addTwoStar&pageNumber=2&showViewpoints=0&sortBy=bySubmissionDateDescending (last visited Feb. 6, 2014).

[21] *See Customer Reviews, Telebrands Pocket Hose, 50-Feet*, Amazon.com, http://www.amazon.com/Pocket-Hose-6847-12-Telebrands-50-Feet/product-reviews/B00ATZZWQS?pageNumber=13 (last visited Feb. 24, 2014).

[22] *See Customer Reviews: Telebrands Pocket Hose, 50-Feet*, Amazon.com, http://www.amazon.com/Pocket-Hose-6847-12-Telebrands-50-Feet/product-reviews/B00ATZZWQS/ref=cm_cr_pr_top_link_12?ie=UTF8&filterBy=addOneStar&pageNumber=12&showViewpoints=0&sortBy=bySubmissionDateDescending (last visited Feb. 6, 2014).

mine.   Other family members purchased these and theirs all broke after a relatively short period of time.  Do yourself a favor and STAY AWAY from this product.  Use your hard earned money and buy a "real" hose at the hardware store of choice.[23]

Another consumer wrote:

THE POCKET HOSE THAT GROWS LEAKS AFTER A FEW WEEKS. I BOUGHT 3 AND HANDLED THEM GENTLY. I SHUT THE WATER OFF WHEN NOT USING.  EVERY ONE OF THE 3 LEAKED AND CRACKED IN THE MID SECTION OF THE HOSE.  DO NOT BUY THESE.  THEY ARE POORLY MADE AND LEAK.  THE LEAK CAN NOT BE REPAIRED.  YOU CAN NOT RETURN THESE AFTER 4 WEEKS.  PLEASE DO NOT BUY THESE HOSES.[24]

Another consumer wrote:

It worked for 24 hours.. first time I watered a pot of mums.. next day I screwed it in and it developed a leak all the way down the side of it couldn't even get water to the nozzle.. total trash.. what a waste of money--- there is a reason it has over a [sic] 1000 bad reviews.[25]

Another consumer wrote:

As an engineer, I can only say this is one of the most defectively designed and manufactured product [sic] I have ever reviewed.  The outer covering is extremely fragile to the point that almost any contact with the ground will initiate micro tearing of the fibers.  Once this starts, the covering gradually comes apart and the inner rubberized tubing expands through the hole created - and literally explodes under any water pressure.  (I actually used three of them and all failed in this manner after 3 to 7 uses.)

I mentioned this problem to a friend who works at Bed, Bath and Beyond.  She said the returns on this item were through the roof.[26]

---

[23]     *See id.*

[24]     *See id.*

[25]     *See Customer Reviews, Telebrands Pocket Hose, 50-Feet*, Amazon.com, http://www.amazon.com/Pocket-Hose-6847-12-Telebrands-50-Feet/product-reviews/B00ATZZWQS/ref=cm_cr_pr_top_link_13?ie=UTF8&filterBy=addOneStar&pageNumber=13&showViewpoints=0&sortBy=bySubmissionDateDescending (last visited Feb. 6, 2014).

[26]     *See id.*

Another consumer wrote:

> GARBAGE.  DO NOT WASTE YOUR MONEY!
>
> Hose split down the side after approximately six uses.
>
> Cons.  Not Durable[27]

Another consumer wrote:

> ABSOLUTE JUNK - JUNK - JUNK!!! YOU ARE WARNED – DO NOT BUY!!!!
>
> If you need a hose for a day or two - buy this... if you want a hose that will last longer than 2 uses (if you are lucky) then buy this....
>
> Bought 2 - both leaked at the connection - no big deal - but both exploded - the outside 'material' tears easy then [sic] the actual 'hose' inside expands at that spot until it explodes... same exact thing happened to my neighbor - I happened to be watching - seemed funny when it happened to him - not too funny when it happened to me - you get soaked!!
>
> I can't believe Home Depot sells this !!!!!!!!!!!
>
> Cons: Not Durable, will not last a week, made like garbage [28]

Another consumer wrote:

> Don't buy this hose
>
> I hooked up the hose with the shut off valve closed, turned the water on and the hose expanded.  Cool.  Then I opened the shut off valve lightly and snap, the lever broke off! I thought, OK...I don't really need the shut off since my hose nozzle has one already so I removed it and hooked the hose directly to the hose nozzle, turned the water on and then it leaked from the threads.  I thought the gasket was bad on my hose nozzle but upon closer inspection the threads aren't even garden hose standard threads which makes the threads bind up before the end can contact the gasket inside the hose nozzle.  Why would a company make something so cheap and unusable?

---

[27]     *See* Customer Reviews, *Pocket Hose ½ in. x 50 ft. Expanding Garden Hose*, Home Depot,     *http://www.homedepot.com/p/Pocket-Hose-1-2-in-x-50-ft-Expanding-Garden-Hose-7205/204069673#customer_reviews* (last visited Feb. 24, 2014).

[28]     *See id*.

Cons: Not Durable [29]

Another consumer wrote:

> Worst hose ever

> I purchased three of these hoses recently and all three have broken.  Two connectors at the spray end broke off about a month and the third started springing leaks all along the hose.  They are not the type of hose that can be used for everyday use around the yard or washing the card.  It presents Home Depot in a bad light to sell such an inferior product.

> Cons: quality is inferior [30]

Another consumer posted the following complaint on the internet and included pictures of his broken Pocket Hose:

> I purchased one of these in the spring when Home Depot had them on sale. I loved it. Looked nice in the front of the house, was light weight and perfect for watering plants and filling the bird bath.

> I bought another one for the back yard. I released the pressure as soon as I finished using them. Only once did I use the back one for an extended period to water a dry area. Two weeks ago I was cleaning the bird bath and POP water all over my back as it burst at the faucet.

> Today we planted some new plants in the back and as I went to water them in I looked down to see a water balloon forming at my wrist and POP water all over me.  I guess it is back to the heavy but reliable hoses.[31]

---

[29]     *See id.*

[30]     *See id.*

[31]     *See Pocket Hose – First One then the Other*, Pissed Consumer, http://www.pissedconsumer.com/reviews-by-company/pocket-hose/first-one-then-the-other-20130902444579.html (last visited Feb. 6, 2014).





43.     Additional pictures submitted along with other consumers' complaints on a consumer complaint message board are reproduced below:





---

32      *See Pocket Hose 25' and 50' Blow Up!!!!!!*, Pissed Consumer (Sept. 30,2013), http://www.pissedconsumer.com/reviews-by-company/pocket-hose/pocket-hose-25-and-50-blow-up-20130930450194.html.

33      *See id.*





---

[34]     *See id.*

44.     Defendants knew or should have known that the Pocket Hoses they manufactured, marketed and/or sold were susceptible to failure and inherently defective.  Telebrands even acknowledge that their products are quickly mass produced, with little development time. Specifically, AJ Khubani, Telebrands founder and CEO has stated "When something works, we need to make a million of them right away.  We don't want a lot of development time."[36]

45.     Yet, after receiving a significant number of complaints from purchasers of Pocket Hose products, describing similar problems, neither Telebrands nor Home Depot have disclosed or corrected the misrepresentations and/or problems.

46.     Moreover, despite knowing and being fully aware of the misrepresentations, Defendants omitted and/or concealed the durability issues from unsuspecting Pocket Hose purchasers at the time of sale.

47.     Defendants' false and misleading claims are in willful and wanton disregard of the interests of the consuming public, and constitute a knowing attempt by Defendants to deceive consumers.  As a result of Defendants' deceptive conduct and material concealments and misrepresentations, Plaintiff and the Class bought millions of units of the Pocket Hose and have suffered –and continue to suffer injury.

---

(...footnote continued)

[35]     *See Pocket Hose Blew Up (all 3 of them)*, Pissed Consumer (Aug. 19, 2013), http://www.pissedconsumer.com/reviews-by-company/pocket-hose/pocket-hose-blew-up-all-3-of-them-20130819440928.html.

[36]     *See* Bruce Horovitz, *Inventors Seek Pot of Gold Through Telebrands*, USA Today, http://usatoday30.usatoday.com/money/advertising/2009-06-24-telebrands-inventors_N.htm# (last updated June 30, 2009, 12:27 PM).

### D.    Defendants' False and Misleading Claims are Material

48.     The representations at issue are ubiquitous.     In Defendants' various advertisements, Defendants make the same representations about the Pocket Hose product, namely that the Pocket Hose product is a "durable" and rugged hose that is "strong enough for any tough job."    Furthermore, Defendants make representations that the Pocket Hose was robustly designed, utilizing "heavy duty fire hose construction" and fit for use as an ordinary garden hose.  All of Defendants' claims challenged herein relate to matters that are material and important to a consumer's purchasing decision, as they concern core claims about the product which are likely to and did influence consumers' purchase of the Pocket Hose product.

49.     Defendants' marketing, advertising, and packaging materials intended to, and did, induce Plaintiff and members of the Class to rely upon Defendants' representations that Pocket Hose was effective for its intended use, and in the way described.  These representations were a substantial factor in causing Plaintiff and members of the Class to purchase the Pocket Hose product instead of conventional and more durable garden hoses.

50.     At the time Plaintiff and members of the Class purchased the Pocket Hose product, they were unaware of the fact that:  (1) Pocket Hose was neither rugged nor durable; and (2) Pocket Hose was not fit for use as an ordinary garden hose.

51.     If Plaintiff and members of the Class had been aware of the true facts concerning Pocket Hose, Plaintiff and members of the Class would not have purchased the Pocket Hose. Plaintiff and members of the Class have been injured in fact and have suffered out of pocket losses.  Plaintiff and members of the Class therefore seek a refund and/or rescission of the transaction and all further equitable and injunctive relief as provided by applicable law.

## CLASS ACTION ALLEGATIONS

52.    Plaintiff Klemballa brings this action on his own behalf and on behalf of a class consisting of all persons in the United States who, within the relevant statute of limitations period, purchased the Pocket Hose product (the "Class").

53.    Plaintiff also seeks to represent a subclass defined as all members of the Class who purchased the Pocket Hose product in New York (the "New York Subclass").

54.    The members of the Class and New York Subclass are so numerous that their individual joinder herein is impracticable.  The precise number of Class members and their identities are unknown to Plaintiff at this time but will be determined through discovery.  Since August 2012, Telebrands has shipped millions of units of the Pocket Hose.  Class members may be notified of the pendency of this action by mail and/or publication distribution records of Defendants and third party retailers and vendors.

55.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

(a)    whether Defendants violated the Magnuson-Moss Act, 15 U.S.C. § 2301, *et seq.*,

(b)    whether Defendants breached an express warranty made to Plaintiff and the Class;

(c)    whether Defendants breached an implied warranty of merchantability made to Plaintiff and the Class;

(d)    whether Defendants breached an implied warranty of fitness for a particular purpose made to Plaintiff and the Class;

(e)    whether Defendants were  unjustly enriched by its conduct;

27

(f)     whether Defendants advertise, or market the Pocket Hose product in a way that is false or misleading;

(g)     whether the Pocket Hose product fails to conform to the representations, which were published, disseminated, and advertised to Plaintiff and the Class;

(h)     whether, by the misconduct set forth in this Complaint, Defendants have engaged in unfair, fraudulent or unlawful business practices with respect to the advertising, marketing and sales of its Pock Hose product;

(i)     whether Defendants violated New York's General Business Law § 349, *et seq.;* and

(j)     whether Defendants violated New York's General Business Law § 350, *et seq.;* whether, as a result of Defendants' misconduct as alleged herein, Plaintiff and Class members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

56.     Plaintiff's claims are typical of the claims of the other members of the Class in that Plaintiff was exposed to Defendants' false, and misleading advertisements and promotional materials and purchased the Pocket Hose.

57.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

58.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members.  Each individual Class member may

lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

### COUNT I
**(Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*)**

59.     Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

60.     Plaintiff brings this Count individually and on behalf of the members of the Class against Defendants.

61.     Pocket Hose is a consumer product as defined in 15 U.S.C. § 2301(1).

62.     Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

63.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

64.     In connection with the sale of the Pocket Hose product, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6) on their websites and in various advertisements and promotional materials by making express warranties that the Pocket Hose is a  "durable" and rugged hose that is "strong enough for any tough job."   Furthermore, Defendants made

representations that the Pocket Hose was robustly designed, utilizing "heavy duty fire hose construction."

65.     Defendants' issued written warranties to the ultimate consumers and the written warranties were the basis of the bargain.  But the Pocket Hose does not conform to the express warranties because each of the express warranties is false and misleading.  The Pocket Hose is not durable, let alone made of heavy-duty construction, in fact, the design of the Pocket Hose product is fundamentally defective.  When used as instructed, the Pocket Hose will leak and/or burst, rendering the product useless.

66.     By reason of Defendants' breach of the express written warranties, Defendants violated Plaintiff and Class members' statutory rights pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiff and Class members.

67.     Plaintiff and Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased Pocket Hose if the true facts had been known.

## COUNT II
### (Breach Of Express Warranty)

68.     Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

69.     Plaintiff brings this Count individually and on behalf of the members of the Class against Defendants.

70.     Defendants expressly warranted on their websites and in various advertisements and promotional materials that the Pocket Hose is a "durable" and rugged hose that is "strong enough for any tough job."  Furthermore, Defendants represented that the Pocket Hose was

robustly designed, utilizing "heavy duty fire hose construction" and fit for use as an ordinary garden hose.

71.     Defendants' warranties were expressly disclosed to Plaintiff and Class members on their websites and in various advertisements and promotional materials including Telebrands' infomercials and websites and Home Depot's website.  Plaintiff and Class members purchased the Pocket Hose product based upon the above said express warranties.  Plaintiff and Class members relied on the truthfulness of the express warranties asserted by Defendants in deciding to purchase Pock Hose product.

72.     Defendants expressly warranted their goods to the ultimate consumers and the express warranties were the basis of the bargain.

73.     Defendants breached their express warranties by selling a product that is not durable or of heavy duty construction.

74.     Plaintiff and Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased Pocket Hose if the true facts had been known.

## <u>COUNT III</u>
### (Breach Of Implied Warranty of Merchantability)

75.     Plaintiff and Class members repeat and reallege each and every allegation above, as if set forth in full herein.

76.     Plaintiff brings this Count individually and on behalf of the members of the Class against Defendants.

77.     Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers impliedly warranted through advertisements and online marketing that Pocket Hose was fit for its intended purpose in that Pocket Hose would function as a durable and rugged full size garden

31

hose.  Defendants did so with the intent to induce Plaintiff and members of the Class to purchase the product.

78.     Defendants breached the implied warranties in the contract for the sale of Pocket Hose in that Pocket Hose could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose.  As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

79.     In reliance upon Defendants' skill and judgment and the implied warranties discussed above, Plaintiff and Class members purchased Pocket Hose for use as a as a durable and rugged full size garden hose.

80.     The Pocket Hose products were not altered by Plaintiff or Class members.

81.     The Pocket Hose products were defective when they left the exclusive control of Defendants.

82.     Defendants knew that Pocket Hose would be purchased and used without additional testing for durability, construction, and suitability by Plaintiff and Class members.

83.     The Pocket Hose product was defectively designed and unfit for its intended purpose, and Plaintiff did not receive the goods as warranted.  Had Plaintiff and the members of the Class known the true facts, they would not have purchased the Pocket Hose product on the same terms.  As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and the Class members have been injured and harmed because they would not have purchased Pocket Hose if the true facts had been known.

## COUNT IV
### (Unjust Enrichment)

84.     Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

85.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

86.     "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state."  *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009) (quoting *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007)).

87.     Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, New Jersey law applies to those claims.

88.     Plaintiff and Class members conferred a benefit on Defendants by purchasing Pocket Hose products.

89.     Defendants have been unjustly enriched in retaining the revenues derived from Class members' purchases of the Pocket Hose, which retention under these circumstances is unjust and inequitable because Defendants misrepresented the facts concerning the durability, construction, and suitability of the product and caused Plaintiff and the Class to lose money as a result thereof.

90.     Plaintiff and Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased Pocket Hose if the true facts had been known.  Because Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and Class members for their unjust enrichment, as ordered by the Court.

### COUNT V
### (Violation of New York Gen. Bus. Law § 349, *et seq.*)

91.     Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

92.     Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendants.

93.     By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices in the state of New York by making the misrepresentations identified above.

94.     The foregoing deceptive acts and practice were directed at consumers.

95.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the durability, construction, and suitability of Pocket Hose to induce consumers to purchase the product.

96.     Defendants' false, misleading and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

97.     Plaintiff and members of the New York Subclass were injured as a direct and proximate result of Defendants' violation of G.B.L. § 349 because they paid for the Pocket Hose, which they would not have purchased had they known the truth about the product.  On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts

and practices described herein, to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT VI
### (Violation of the New York Gen. Bus. Law § 350, *et seq.*)

98.     Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

99.     Plaintiff brings this Count individually and on behalf of the members of the New York Subclass against Defendants.

100.     By the acts and conduct alleged herein, Defendants committed false advertising in the conduct of business, trade or commerce in the state of New York.

101.     New York G.B.L. § 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." The foregoing acts and practices were directed at consumers.

102.     The foregoing false advertisements are misleading in a material way because they fundamentally misrepresent the durability, construction, and suitability of the Pocket Hose to induce consumers to purchase the product.

103.     Plaintiff and members of the New York Subclass were injured as a direct and proximate result of Defendants' violation of G.B.L. § 350 because they paid for the Pocket Hose, which they would not have purchased had they know the truth about the product.

104.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

A.     For an order certifying the nationwide Class, and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Klemballa as Class Representative and his attorneys as Class Counsel to represent the Class and Subclass members;

B.     For an order declaring that Defendants' conduct violates the statutes referenced herein;

C.     For an order finding in favor of the Plaintiff, the nationwide Class and the New York Subclass on all counts asserted herein;

D.     For an order awarding compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

E.     For prejudgment interest on all amounts awarded;

F.     For an order of restitution and all other forms of equitable monetary relief;

G.     For injunctive relief as pleaded or as the Court may deem proper; and

H.     For an order awarding Plaintiff, the Class and the New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

> **CARELLA, BYRNE, CECCHI,**
> **OLSTEIN, BRODY & AGNELLO**
> Attorneys for Plaintiff
>
> By:___/s/ James E. Cecchi_____
>        JAMES E. CECCHI

Dated: February 25, 2014

Antonio Vozzolo
Courtney E. Maccarone
**FARUQI & FARUQI, LLP**
369 Lexington Avenue, 10th Floor
New York, NY 10017
(212) 983-9330

36

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable in this action.

**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO**
Attorneys for Plaintiff

By:     /s/ James E. Cecchi
        JAMES E. CECCHI

Dated: February 25, 2014

Antonio Vozzolo
Courtney E. Maccarone
**FARUQI & FARUQI, LLP**
369 Lexington Avenue, 10th Floor
New York, NY 10017
(212) 983-9330